## JOSIAH Q. LORING *vs.* MANUFACTURERS' INSURANCE COMPANY.

A mortgagee of real estate, to whom a policy of insurance thereon is made payable in case of loss, is not the assignee of the policy, and is affected by subsequent acts of the assured.

A policy of insurance, made to the owner of a mill, upon "his interest, being one half" thereof, provided that if the property should be sold or conveyed, in whole or in part, the policy should become void, but that the policy "might continue for the benefit of such purchaser, if the company give their assent thereto, to be evidenced by a certificate of the fact, or by indorsement on this policy." The assured afterwards obtained another policy from the same company on "his interest, being three tenths" of the same mill; and then sold the whole property, and assigned the second policy to the purchaser, by an indorsement thereon, which recited that he had "sold the within insured property" to him, and was assented to in writing by the company. *Held*, that this assent was not a

sufficient certificate of the fact of sale, to continue the first policy in force; and that oral evidence that the sale of the whole property was disclosed to the company before their assent to the indorsement upon the second policy was inadmissible to support an action on the first policy.

DEWEY, J.* This is an action on a policy of insurance made on the 11th of June 1853 to Charles Beaumont in the sum of four thousand dollars upon "his interest, being one half of the wooden steam saw mill situated in Hampden, Maine, formerly called the Mitchell mill." The plaintiff, at the date of the policy, had a mortgage on an undivided half of the mill. Indorsed on this policy was the following order, signed by Beaumont, and assented to in writing by the defendants' secretary : "June 12th 1853. In case of loss, pay the within to Josiah Q. Loring, Esq., to secure his mortgage." The mill having been destroyed by fire within the period for which the insurance was effected, and the payment in case of loss having been, by this written order, indorsed on the policy, directed to be made to the plaintiff, and assented to by the defendants, if nothing further was shown, this action would be maintained.

The defendants then urge in their defence, that this policy is wholly void, and that they are discharged from all liability thereon, the policy being subject to a condition set forth on the face of it, "that if the property insured shall be sold or conveyed, in whole or in part, the risk shall cease, and the policy shall become void." It appears by the facts stated in the report of the case, that on the 8th of July 1853 Beaumont conveyed to Daniel B. Hinckley by deed of quitclaim all his interest in the saw mill, thus parting with all his interest in the property insured by this policy. This fact is admitted, and, if uncontrolled by the further facts in the case, is of course fatal to the plaintiff's right to recover in the present action. This policy was not assigned to the plaintiff, nor did it become an insurance on his interest as mortgagee, but the plaintiff had a mere written order to pay to him such sum as should become payable to Beaumont thereon. Such was the legal effect of the transfer of this policy

---

* BIGELOW, J. did not sit in this case.

3*

as made by Beaumont. *Hale* v. *Mechanics' Mutual Fire Ins. Co.* 6 Gray, 169. The plaintiff has, therefore, to meet the case of a sale by Beaumont, and to control the effect of such sale as defeating this policy.

The plaintiff insists that he has a good and sufficient answer to this, upon the facts in the case, and under the provision in the policy, that in case of a sale of the property insured " the policy may continue for the benefit of such purchaser, if this company give their assent thereto, to be evidenced by a certificate of the fact, or by indorsement on this policy." And the further question is, whether the policy was, after the sale by Beaumont, continued in force under this provision. It will be seen that it might have been done in two modes:

1st. By an indorsement on this policy of the assent of the defendants to continue the same after the sale, for the benefit of the purchaser. But no such indorsement is found on this policy; the only indorsement thereon being the order already stated, assented to in writing by the company. This was previous to the sale to Hinckley, relied upon to defeat the policy, and has no allusion to such sale. It is therefore entirely insufficient as an indorsement on the policy of the assent of the defendants to continue such policy after the sale to Hinckley.

2d. If that consent of the company is shown in any legal form, it is in the other prescribed mode, namely, " by a certificate of the fact." This necessarily implies a written document signed by the defendants or their agent, or adopted by them, assenting to the continuance of the policy after the sale, and made in reference to the fact that such sale had taken place. Has any competent evidence been produced by the plaintiff of such certificate having been made?

This opens the inquiry as to the proceedings of these parties in relation to other policies made by the defendants to Beaumont, as to the same steam saw mill, and particularly that of the 18th of June 1853, for $2,400, upon " his interest, being three tenths of the wooden steam saw mill, situated in Hampden, Maine, formerly called the Mitchell mill." On this policy are the fol-lowing indorsements, each signed by Beaumont, and assented to

by the defendants' secretary: "18th June 1853. In case of loss, pay one thousand dollars of the within to M. P. Sawyer, Esq., to cover mortgage." "July 8th 1853. Having sold the within named property to Daniel B. Hinckley, of Bangor, I hereby assign and transfer to him the within policy, and in case of loss under the same, this company will please pay the same to him, first reserving the right of M. P. Sawyer to receive one thousand dollars."

This second indorsement on the policy of the 18th of June, it will be seen, constituted a full assent on the part of the defendants to continue that policy after the sale by Beaumont. As to the liability of the defendants upon that policy, no question is raised by them. The point in dispute here is, whether this indorsement on the policy of the 18th of June operates as an assent to the continuance of the policy of the 11th of June on a distinct interest in the same saw mill? Waiving other difficulties in the case, the question first arises as to what property is described in the indorsement on the policy of the 18th of June. The language is, "having sold the within insured property to Daniel B. Hinckley." Looking at the mere question of identity of property here described as sold to Hinckley, the inquiry would be what property is described as sold? Is it three tenths of the saw mill, or the whole saw mill? That must be settled, as it would seem, by reference to the policy on which the indorsement is made. It is said to be "the within insured property." Upon turning to the policy, the property insured in the policy was only three tenths of the steam saw mill. That was all that was embraced in "the within insured property," and when the sale to Hinckley is stated, it is thus limited therefore, and the continuance of that policy, and assent thereto, are alone signified. Whether considering the effect of this indorsement either as a question of notice or of sale, or assent thereto, we can only read it as a recital of a sale of three tenths of the steam saw mill. The language is limited to that, and we can go no further than to give its natural and obvious construction.

Whether, if it could be read as a notice of the sale of the whole, such notice, without assent of the defendants to continue

the policy as to the other portion previously insured, could avail, would certainly present a serious, and probably insuperable difficulty ; as it is the assent of the defendants to the continuance of the policy, after they are notified of the sale, that continues the policy for the benefit of the purchaser.    There is nothing anywhere to signify the assent of the defendants to continue any other policy than that of the 18th of June, which was upon a distinct three tenths of the saw mill.   In the opinion of the court, this recital of the sale, and assent to a continuance of the policy, must be restricted to the three tenths of the saw mill insured in that policy ; which of course excludes the one half of the saw mill insured by the previous policy, on which this suit is brought, and the only one with which the plaintiff has any connection or interest.    Upon the paper documents and proofs resulting therefrom, the plaintiff has failed to show that the defendants assented to the continuance of the policy of the 11th of June.

The plaintiff then proposes to show by parol evidence that the defendants, at the time of the making of the indorsement on the policy of the 18th of June, in fact had notice that Beaumont had conveyed all his interest in the entire saw mill to Hinckley, and that the policy of the 11th of June, and that of the 18th of June were both presented and assented to, as to their respective indorsements, at the same time.    This fact of knowledge of the sale of the whole interest is denied by the defendants, and evidence is offered on their part tending to rebut the plaintiff's evidence, and also to disprove the fact of the policy of the 11th of June having been presented to them at the time when their assent to a continuance was entered on the policy of the 18th of June. If these facts thus relied upon by the plaintiff, to show knowledge by the defendants of the sale of the entire saw mill to Hinckley at the time of making the indorsement of the 8th of July upon the policy of the 18th of June, were material, it was agreed by the parties that the evidence upon that point should be submitted to a jury.    But in our opinion such evidence would be incompetent to show the fact of assent to the continuance of the policy of the 11th of June, after the sale to Hinckley.    The defendants had the right to stipulate, for their greater security

against the errors of treacherous memory, or the greater evils of false oral statements by witnesses, that the evidence of such assent should be wholly in writing, either indorsed on the policy, or by a written certificate issued by them. The assured being a party thereto, is bound by that provision in the policy ; and the plaintiff, in seeking to enforce payment for a loss under this policy, must show the assent to a continuance of the policy, after the sale to Beaumont, in the manner stipulated in the policy, " by a certificate of the fact, or by indorsement on the policy." Numerous cases might be cited to this effect, but the law is too well settled to require it. Upon the ground taken by the defendants, they have maintained their defence, and are not legally liable in this action. *Judgment for the defendants.*

*G. W. Phillips,* for the plaintiff.

*R. Fletcher & C. A. Welch,* for the defendants.